UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

KRISHTIAN LOPEZ,

Plaintiff,

-against-

THE CITY OF NEW YORK, CORIZON HEALTH
INC., Dr. JOHN and JANE DOE # 1 THROUGH
6; CORRECTION OFFICER JOHN DOE # 1
THROUGH 8, in their individual and official
capacities as employees of the City of New
York,

Defendants.

------------------------------------------------------------- X

**COMPLAINT**
Jury Trial Demanded



## NATURE OF THE ACTION

Plaintiff by his attorney, AMY RAMEAU, ESQ., complaining of the

defendants respectfully alleges, upon information and belief:

1.      This is an action to recover money damages arising out of the

violation of plaintiff's rights under the Constitution of the United States,

the Constitution of the State of New York as well as the common law of

the State of New York.

## JURISDICTION

2.      This is a civil rights action for money damages brought pursuant

to 42 U.S.C. § 1983 *et. seq.* for deprivation of adequate medical treatment

and deprivation of protected rights, including rights under the Eighth

and Fourteenth Amendments of the United States Constitution and the

Constitution of the State of New York, and the common law of the State

of New York, against defendants mentioned above and against the City of

New York.   The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a) (b) and (c).

## JURY DEMAND

4.      Plaintiff demands a trial by jury in this action.

## PARTIES

5.      Plaintiff at all times relevant hereto resided in the City and State of New York.

6.      That at all times hereinafter mentioned, and upon information and belief, the defendant City of New York, was at all times relevant hereto, a municipal corporation duly organized and existing pursuant to the laws, statutes and charters of the State of New York.

7.      The New York City Department of Correction was at all times relevant hereto, an agency of the defendant City of New York.

8.      That at all times hereinafter mentioned, and on information and belief, the defendant correctional officers, were at all times relevant hereto, employees of the defendant City of New York, as correctional officers employed by the New York City Department of Correction.

9.      That at all times hereinafter mentioned, the individual defendants are named herein both personally and in their official representative

capacities as correctional officers employed by the defendant, The City of New York through its agency, the New York City Department of Correction. And that each and all of the acts of the individual defendants alleged herein were done by the individual defendants and each of them under cover and pretense of the statutes, ordinances, regulations, policies, customs, usages and laws of the City and State of New York.

10. That as a result of the foregoing, the defendant City of New York, is liable for the individual defendants' acts pursuant to the doctrine of "respondeat superior."

11. The defendant City through the Department of Corrections ("DOC") operates a number of jails. Correctional Health Services ("CHS") is a unit within the New York City Department of Health and Mental Hygiene ("DOHMH"), a City Agency. DOHMH through CHS is responsible for providing medical care and services to prisoners confined to New York City jails. DOC and DOHMH/CHS are also responsible for the appointment, training, supervision, and conduct of their own clinical personnel including the defendant physicians referenced herein.

12. Upon information and belief, at all times relevant hereto, Defendant Corizon Health Incorporated ("Corizon") provided medical care to prisoners in DOC custody. In carrying out its duties, Corizon is to ensure that the personnel it employs in city jails complies with all DOC

and DOHMH/CHS policies, procedure and protocols in addition to all relevant local state and federal statutes and regulations.

13.   At all times relevant hereto, defendants Dr. John and Jane Doe #1 through 6 were physicians contracted by the City through defendant Corizon to administer care to the inmate population in DOC custody. During plaintiff's stay on Rikers Island, said physicians were responsible for providing appropriate medical care to prisoners such as plaintiff. The physician defendants are sued in their individual capacities.

14.   Defendant Corizon, as employer of all of the physician defendants, is responsible for their wrongdoing under the doctrine of "respondeat superior."

15.   At all times mentioned herein, defendants physicians were acting under color of state and local law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the City of New York and the State of New York.

## STATEMENT OF FACTS

### A History of Excessive Force in New York City Jails

16.   In August of 2014, the United States Attorney's Office issued a shocking report, exposing the DOC for deplorable conditions in New York City Jails, including of course the DOC's culture of excessive use of force by staff against inmates. In fact, for decades, through Department reports and civil litigation, DOC has been aware of the routine, dangerous, and unconstitutional use of excessive force by staff at

individual facilities in the New York City Department of Correction. *See, e.g., Fisher v. Koehler*, 692 F. Supp. 1519 (S.D.N.Y. 1988), *injunction entered*, 718 F. Supp. 1111 (1989), *aff'd*, 902 F.2d 2 (2d Cir. 1990) [Correction Institution for Men]; *Jackson v. Montemagno*, CV 85-2384 (AS) (E.D.N.Y.) [Brooklyn House of Detention]; *Reynolds v. Ward*, 81 Civ. 101 (PNL) (S.D.N.Y.) [Bellevue Prison Psychiatric Ward]; *Sheppard v. Phoenix*, 91 Civ. 4148 (RPP) (S.D.N.Y.) [Central Punitive Segregation Unit].

17.     For example, *Sheppard v. Phoenix*, 210 F. Supp. 2d 250 (S.D.N.Y. 1998) (terminating injunction), was a class action that concerned the City's Central Punitive Segregation Unit (CPSU). That litigation unearthed abuse of prisoners and cover-ups sufficiently serious to merit criminal prosecution.

18.     *Ingles v. Toro*, 438 F. Supp. 2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), was a system-wide class action challenging the pervasive practice of using excessive force against inmates incarcerated in New York City's jails. This litigation revealed significant numbers of credible excessive force complaints from prisoners who had been seriously injured by staff in the City jails. The settlement of this class action was intended to provide meaningful improvements in the training, practice, and supervision of agency staff and investigators, and changes in the Department's use of force policy.

19.    Since 2002, senior supervisors and uniformed staff in the DOC have been sued repeatedly by inmates alleging staff beatings. Many of these cases, all resulting in favorable judgments for plaintiffs following settlement, include remarkably similar allegations of misconduct. See:

• Reynolds v. City of New York, No. 11 Civ. 621 (S.D.N.Y.) (alleging beat-up in George Motchan Detention Center ("GMDC") resulting in shoulder fracture and loss of consciousness; settled for $200,500);

• Mull v. City of New York, No. 08 Civ. 8854 (S.D.N.Y.) (alleging beat-up in AMKC resulting in diffuse axonal injury to brain, partial loss of eyesight, and partial loss of hearing, and requiring the victim to take seizure medications; settled for $550,000);

• Belvett v. City of New York, No. 09 Civ. 8090 (S.D.N.Y.) (alleging beat-ups at GMDC and Robert N. Davoren Center ("RNDC") resulting in facial fracture;  settled for $350,000);

• Youngblood v. Baldwin, No. 08 Civ. 5982 (S.D.N.Y.) (alleging beat-up at GRVC resulting in skull laceration and broken nose; settled for $240,000);

• Williams v. City of New York, No. 07 Civ. 11055 (S.D.N.Y.) (alleging beat-up in Otis Bantum Correctional Center ("OBCC") resulting in fractured jaw and facial bones and torn earlobe; settled for $202,500);

• Williams v. City of New York, No. 09 Civ. 5734 (S.D.N.Y.) (alleging beat-up in RNDC resulting in laceration to head; settled for $87,500);

• Lee v. Perez, No. 09 Civ. 3134 (S.D.N.Y.) (alleging beat-up at North Infirmary Command ("NIC") resulting in multiple rib fractures, a spinal fracture and a collapsed lung; settled for $300,000);

• Shuford v. City of New York, No. 09 Civ. 945 (S.D.N.Y.) (alleging two beat-ups at RNDC resulting in facial fractures; settled for $375,000);

• Diaz v. City of New York, No. 08 Civ. 4391 (S.D.N.Y.) (alleging beat-ups involving two inmates, one at AMKC and one at OBCC; settled for $400,000 and $450,000, respectively);

• Lugo v. City of New York, No. 08 Civ. 2931 (S.D.N.Y.) (alleging beat-up at NIC resulting in orbital fracture; settled for $185,000);

• Cuadrado v. City of New York, No. 07 Civ. 1447 (S.D.N.Y.) (alleging beat-up at RNDC resulting in punctured lung; settled for $175,000);

• Scott v. City of New York, No. 07 Civ. 3691 (S.D.N.Y.) (alleging beat-up at GMDC resulting in orbital fracture; settled for $175,000);

- Pischeottola v. City of New York, No. 06 Civ. 2505 (S.D.N.Y.) (alleging beat-up at RNDC resulting in punctured lung requiring chest tube; settled for $150,000);

- Rice v. N.Y.C. D.O.C., No. 03 Civ. 582 (S.D.N.Y.) (alleging beat-ups of two inmates at GRVC resulting in collapsed lung and contusion hematomas in one case, and in neck and spinal cord injuries causing permanent stutter in the other; settled for $255,000 and $590,000, respectively);

- Joseph v. N.Y.C. D.O.C., No. 02 Civ. 9219 (S.D.N.Y.) (alleging beat-up at GRVC resulting in orbital fracture; settled for $375,000).

20.    Additionally, through DOC's elaborate reporting system, the City of New York was aware of the pattern of a large number of incidents involving the use of unnecessary and/or excessive force by DOC staff members resulting in serious injuries to inmates but failed to take sufficient steps to curb these abuses.

21.    At the time plaintiff was beaten, the City was aware of the unwillingness of the Department to investigate adequately and impose meaningful discipline against DOC staff members who use unnecessary and excessive force on prisoners, or who fail to accurately and honestly report it.

22.    Through all these cases and Department reports, the City has been made aware of the widespread practice by DOC staff members of using

excessive and/or unnecessary force to injure, and not restrain, inmates. They have also been made aware of the failures of DOC's Investigation Division to adequately investigate allegations of misconduct and of the refusal of the Department to bring effective disciplinary charges against its officers to promote institutional reform and protect the safety of prisoners confined in DOC custody.

23.   The City cannot credibly contend that they are unaware of the pattern of abuse that occurs with regularity in New York City jails and the failure of the City to take sufficient measures to investigate and discipline this abuse.

24.   The City has not taken sufficient steps to curb the abuse that occurs on a daily basis in New York City jails. Indeed, it allows that abuse to persist through inadequate investigations of allegations of misconduct and the failure to discipline officers in the face of obvious wrongdoing.

**Assault upon Plaintiff**

25.   Plaintiff is a Hispanic male.

26.   On or about September 1, 2014, plaintiff was incarcerated on Rikers Island (hereinafter "Rikers"). Rikers is owned and operated by the defendant City.

27.   Defendant Correctional officers were responsible for the care, Safety and well being of plaintiff while he was incarcerated at Rikers.

Defendant correctional officers deliberately failed to properly care for the health, safety and well being of plaintiff during his incarceration, including the period on or about September 1, 2014, in fact one of said defendants attacked plaintiff.

28.    At about 11pm on September 1, 2014, plaintiff was returning to his cell at OBCC. Plaintiff intended to turn in for the night.

29.    A light skinned Hispanic male guard, escorting plaintiff, became frustrated that plaintiff was taking too long to turn in for the night and hit plaintiff in the face with a tremendous amount of force, breaking plaintiff's jaw in three (3) places and knocking him unconscious. Plaintiff "saw white" and immediately lost consciousness. When Plaintiff came to, he was in tremendous pain and begged a number of correctional officers he encountered for assistance. Each and every guard told plaintiff over and over again, "No...I don't want to have anything to do with this."

30.    Plaintiff bled from the mouth and experienced substantial pain.

31.    Plaintiff begged for medical attention several times and was denied medical attention.  Correctional officers told plaintiff that he was being denied medical attention for fear that he would report this assault. Plaintiff pleaded that he would not tell anyone, including hospital staff about the incident.

32.    After what appeared to be an eternity, plaintiff was taken to the infirmary on a gurney.  Plaintiff was unrecognizable, as his face appeared

deformed and swollen.  Once at the prison infirmary, a prison doctor took a look at plaintiff and called 911.  Plaintiff was taken to Bellevue Hospital. At the hospital, doctors took several x-rays of plaintiff's head, face, and confirmed the existence of several broken bones.  Plaintiff remained in the hospital for several days due to the injuries he sustained at the hands of this violent defendant.

33.  Plaintiff required emergency medical attention and surgical intervention to repair the damage to his face.  Surgeons at Bellevue Hospital inserted metal plates in plaintiff's face to reconstruct plaintiff's face and plaintiff's mouth had to be wired shut.  Per plaintiff's doctors, additional surgeries may very well be necessary given the extent of the damage inflicted.

34.  At no time did plaintiff assault or attempt to assault any officer, nor did he present a threat or perceived threat to the personal safety of any officer or to the security of the jail so as to warrant such violence.

35.  Plaintiff did not provoke this attack nor did he conduct himself in any manner that would warrant any use of force, much less the excessive force actually used.  Defendant officer acted sadistically and maliciously and demonstrated deliberate indifference toward plaintiff's rights and physical wellbeing.

36.  All of the above was done in violation of state and federal law.

37.   Defendant employed unnecessary and unreasonable force against the plaintiff. Defendant officers acted maliciously and intentionally, and said acts are examples of gross misconduct.

38.   As a direct and proximate result of the malicious and outrageous conduct of defendants set forth above, Plaintiff suffered injuries including but not limited to emotional trauma, harm and distress, mental anguish and serious physical injuries.

39.   The conduct of the individual defendants in assaulting the plaintiff and denying him medical attention directly and proximately caused serious physical and emotional injury, pain and suffering, mental anguish, humiliation and embarrassment.

40.   After his return to Rikers Island, plaintiff's injuries were such that plaintiff needed continuous treatment. However, defendant Corizon failed in that regard. Defendant physicians failed to examine, diagnose and medically treat plaintiff and were deliberately indifferent to the severity and cause of plaintiff's distress and were willful wanton and/or reckless in their failure to properly diagnose and treat plaintiff.

41.   Plaintiff repeatedly complained of severe pain and bleeding to correctional officers and medical personnel.  During that time, plaintiff asked for medical assistance.  Defendants ignored plaintiff's pleas.

42.   On September 21, 2014, Plaintiff experienced severe bleeding from the mouth for 8 hours without any care whatsoever. Defendant

physicians did absolutely nothing to treat plaintiff.  Again on September 24, 2014, plaintiff bled profusely from the mouth. Plaintiff was transported to the Elmhurst Hospital Emergency Room due to excessive bleeding from the mouth, which defendant physicians had ignored on Rikers.

43.     While in transport, medical records note that plaintiff was hot to the touch and possibly suffering from septic shock and respiratory distress. After an examination and blood work up at Elmhurst, plaintiff was noted as presenting with levels of blood loss approaching hemorrhagic levels although insufficient to a warrant blood transfusion. Nevertheless, this medical record entry included that plaintiff was "a young asymptomatic patient with stable vital signs and controlled bleeding."

44.     All of the above was done in violation of state and federal law.

45.     As a direct and proximate result of the malicious and outrageous conduct of defendants set forth above, Plaintiff suffered injuries including but not limited to emotional trauma, harm and distress, mental anguish, serious physical injuries including three (3) facial fractures, psychological injury and suffering, and permanent disfigurement.

46.     The conduct of the defendant correctional officers in assaulting the plaintiff and denying him medical attention directly and proximately

caused serious physical and emotional injury, pain and suffering, mental anguish, humiliation and embarrassment.

47. The officer intentionally used excessive force. The individual defendants acted with reckless and wonton disregard for the rights, health, and safety of the plaintiff.

48. All of the events complained of above have left permanent emotional scars that the plaintiff will carry with him for the remainder of his life.

## COUNT ONE
### Assault and Battery
### Against Individual Defendant Officers

49. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

50. Defendant officers assaulted and battered plaintiff.

51. As a direct and proximate result of this assault and battery, plaintiff suffered the damages herein alleged.

## COUNT TWO
### 42 U.S.C. § 1983
### Excessive Use of Force
### Against Individual Defendant Officers

52. The plaintiff incorporates by reference the factual allegations set forth above as if fully set forth herein.

53. The conduct and actions of defendants acting under color of law and under their authority as New York City police officers was done

intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification, and was designed to and did cause specific serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. § 1983 and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

54.    As a direct and proximate result of this misconduct and abuse of authority detailed above, plaintiff sustained the damages herein alleged.

**COUNT THREE**
**Intentional Infliction of Emotional Distress**
**As to All Individual Defendants**

55.    The plaintiff incorporates by reference the factual allegations set forth above as if fully set forth herein.

56.    By the actions described above, defendant officer engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which intentionally caused severe emotional distress to the plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed him by the laws and Constitution of the State of New York.

57.    As a result of the foregoing, the plaintiff was subjected to great humiliation, and was otherwise damaged and injured.

58.   As a direct and proximate result of police misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## COUNT FOUR
### 42 U.S.C. § 1983
### Against Defendant City

59.   The plaintiff incorporates by reference the factual allegations set forth above as if fully set forth herein.  Prior to the date of the incident alleged herein, the City of New York developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in New York, which caused the violation of plaintiff's rights.

60.   It was the policy and/or custom of the City of New York to inadequately and improperly investigate citizen complaints of widespread, systemic police misconduct, and such acts of misconduct have instead been allowed by the City of New York.

61.   It was the policy and/or custom of the City of New York to inadequately supervise and train its police officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City of New York did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

62.   The effects of any in-service training and re-training of officers known to have engaged in police misconduct were wholly negated by the rampant culture of misconduct and impunity sanctioned by the

command structure of the New York City Police Department and City of New York.

63.   As a result of the above described policies and customs, police officers of the City of New York, including the Defendant Officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be allowed.

64.   The above described policies and customs demonstrated a deliberate indifference on the part of policymakers of the City of New York to the constitutional rights of persons within the City, and were the cause of the violations of plaintiff's rights alleged herein.

**COUNT FIVE**
**Respondeat Superior Liability**
**Against the City of New York**

65.   The plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

66.   The conduct of defendant officers occurred while they were on duty, under the color of law, in and during the course and scope of their official duties and functions as duly sworn New York City police officers, and while they were acting as agents and employees of the City of New York and the NYPD, and as a result the defendants City of New York is liable to the plaintiff pursuant to the doctrine of respondeat superior.

67.   As a direct and proximate result of this misconduct and abuse of authority detailed above, plaintiff sustained the damages herein alleged.

**COUNT SIX**

### Negligent hiring/Training/
### Retention of Employment Services
### Against Defendant City

68.    Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

69.    Defendant City, through the NYPD, owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

70.    Upon information and belief, all of the Individual Defendants were unfit and incompetent for their positions.  Upon information and belief, defendant City knew or should have known through the exercise of reasonable diligence that the Individual Defendants were potentially dangerous.

71.    Upon information and belief, defendant City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused each of plaintiff's injuries.

72.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### COUNT SEVEN
### Deliberate Indifference to Medical Needs
### As to all defendants

73.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

74.   The individual defendants were aware of plaintiff's need for medical care and failed to act in deliberate indifference to plaintiff's needs.

75.   Accordingly, defendants violated the Eighth and the Fourteenth Amendment because they acted with deliberate indifference to plaintiff's medical needs.

**COUNT EIGHT**
**Failure to Intervene**
**As to all individual defendants**

76.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

77.   Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

78.   Accordingly, the defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

79.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**COUNT NINE**
**Medical Malpractice**
**Against the Physician Defendants and Corizon**

80.   The Medical Defendants were employed, retained and/or contracted with by the City to provide medical care to all inmates in the care and custody of the City in New York City jails, including Mr. Lopez. The Medical Defendants agreed and purported to provide medical care and services to inmates on Rikers Island at all relevant times herein.

81.   The Medical Defendants and defendant Corizon held themselves out as possessing the proper of degree learning and skill necessary to render medical care, treatment, and services in accordance with good and accepted medical practice, and that they undertook to use reasonable care and diligence in the care and treatment of inmates, including Mr. Lopez.

82.   The Medical Defendants and Corizon were negligent and careless, acted contrary to sound medical practice, and committed acts of medical malpractice against Mr. Lopez.

83.   Defendant Corizon, as employer of some or all of the physician Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

84.   As a result of defendants' medical malpractice, negligence, carelessness, and unskillfulness, Mr. Lopez sustained the damages hereinbefore alleged together with permanent and consequential sequelae therefrom. A certificate of merit pursuant is annexed hereto.

## COUNT TEN
### Negligent Hiring/Training/Retention of Employment Services Against Corizon

85.   Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

86.   Defendant Corizon owed a duty of care to Mr. Lopez to prevent the conduct alleged, because under the same or similar circumstances, a reasonable, prudent, and careful person should have anticipated that

injury to Mr. Lopez or to those in a like situation would probably result from the foregoing conduct.

87.   Upon information and belief, all of the Medical Defendants were unfit and incompetent for their positions.

88.   Corizon knew or should have known through the exercise of reasonable diligence that the Medical Defendants that it employed were potentially dangerous. Corizon's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused plaintiff's injuries and lack of treatment.

89.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**COUNT ELEVEN**
**Negligence**
**Against the Individual Defendants and Corizon**

90.   Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

91.   Defendants owed a duty of care to Mr. Lopez as an inmate on Riker's Island.

92.   Defendants breached the duty of care that they owed to Mr. Lopez by not properly performing their duties, by not being at their correct posts, by denying him access to adequate medical care in failing to provide medical treatment, and/or otherwise neglecting his medical needs.

93.   Defendants' breach of their duty of care was the proximate cause of Mr. Lopez' serious injuries, including severe pain and suffering.

94.    Defendant Corizon, as employer of all or some of the Medical Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

95.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

### EIGHT CLAIM FOR RELIEF
### New York State Constitution, Art I § 12
### Against the Individual Defendants and Corizon

96.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

97.    By reason of the foregoing, by negligently, carelessly and recklessly supervising Mr. Lopez and by denying Mr. Lopez adequate medical care, defendants deprived him of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I § 12 of the New York Constitution.

98.    Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as City and/or Department of Corrections and/or DOHMH/CHS officers, agents, or employees. Said acts by defendants were beyond the scope of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive Mr. Attzs of his constitutional rights secured by Article I § 12 of the New York Constitution.

99.    Defendants, their officers, agents, servants, and employees were responsible for the deprivation of Mr. Lopez' constitutional rights.

100.  Defendant Corizon, as employer of some or all of the Medical Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

101.  As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

1.    Plaintiff's injuries were a direct and proximate result of the defendant City and the NYPD's wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant City and the NYPD to properly supervise, train and discipline their police officers.

2.    As a result of the foregoing, Plaintiff was deprived of his liberty, endured psychological and emotional injury, humiliation, costs and expenses and suffered other damages and injuries.

### **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

DATED:     February 26, 2014
           Brooklyn, New York

_____
Amy Rameau, Esq.
16 Court Street, Suite 2504
Brooklyn, NY 11241
718.887.5536
Fax 718.875.5440

*Attorney for plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

KRISHTIAN LOPEZ,

                    Plaintiff,

           -against-

THE CITY OF NEW YORK, CORIZON HEALTH
INC., Dr. JOHN and JANE DOE # 1 THROUGH
6; CORRECTION OFFICER JOHN DOE # 1
THROUGH 8, in their individual and official
capacities as employees of the City of New
York,

    Defendants.

------------------------------------------------------------x

**CERTIFICATE OF MERIT**

| STATE OF NEW YORK | ) |
|---|---|
| | ss.: |
| COUNTY OF KINGS | ) |

        AMY RAMEAU, an attorney duly admitted to practice law before

the courts of the state of New York, hereby affirms as follows:

1. I am the attorney of record for plaintiff herein and I submit this certificate of Merit in accordance with the provisions of CPLR 3012-a in relation to the pendent New York State claim for medical malpractice.

2. I have reviewed the facts of this case and have consulted with at least one physician who is licensed to practice medicine in this state and I reasonably believe that said physician is knowledgeable as to the relevant issues involved in this particular action, and I have concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of this action.

Dated: Brooklyn, New York
February 26, 2015

                              _____
                              Amy Rameau, Esq.