UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

KRISHTIAN LOPEZ,

                             Plaintiff,

               -against-

THE CITY OF NEW YORK, CORIZON HEALTH
INC., Dr. JOHN and JANE DOE # 1 THROUGH
6; Correction Officer RICARDO MARTINEZ,
CORRECTION OFFICERS JOHN DOE # 1
THROUGH 3, in their individual and official
capacities as employees of the City of New
York,

                            Defendants.
-------------------------------------------------------------- X

                FIRST AMENDED
COMPLAINT

                Jury Trial Demanded

                15 CV 999 (JG)(RLM)

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution of the United States, the as well as the common law of the State of New York.

## JURISDICTION AND VENUE

2. This is a civil rights action for money damages brought pursuant to 42 U.S.C. §§ 1983, and 1988, the Fourteenth Amendments of the United States Constitution, and the common law of the State of New York, against defendants mentioned above and against the City of New York.   The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a) (b) and (c).

## JURY DEMAND

4.  Plaintiff demands a trial by jury in this action.

## PARTIES

5.  Plaintiff at all times relevant hereto resided in the City and State of New York.

6.  That at all times hereinafter mentioned, and upon information and belief, the defendant City of New York, was at all times relevant hereto, a municipal corporation duly organized and existing pursuant to the laws, statutes and charters of the State of New York.

7.  The New York City Department of Correction was at all times relevant hereto, an agency of the defendant City of New York.

8.  That at all times hereinafter mentioned, and on information and belief, the defendant Correctional Officer Ricardo Martinez, was at all times relevant hereto, an employee of the defendant City of New York, as a correctional officer employed by the New York City Department of Correction.

9.  That at all times hereinafter mentioned, defendant Martinez, both personally and in his official representative capacity as a correctional officer employed by the defendants, The City of New York through its agency, the New York City Department of Correction.   And that each and all of the acts of defendant Martinez, alleged herein, was done by the defendant Martinez

under cover and pretense of the statutes, ordinances, regulations, policies, customs, usages and laws of the City and State of New York.

10.     That at all times hereinafter mentioned, and on information and belief, the defendants Correctional Officer John and Jane Doe #1 through 6 were at all times relevant hereto, employees of the defendant City of New York, as correctional officers employed by the New York City Department of Correction.

11.     That at all times hereinafter mentioned, defendants John and Jane Does #1 through 6, both personally and in their official representative capacities as correctional officers employed by the defendants, The City of New York through its agency, the New York City Department of Correction.  And that each and all of the acts of defendants John Does #1 through 6, alleged herein, was done by the defendants John and Jane Does # 1 through 6 under cover and pretense of the statutes, ordinances, regulations, policies, customs, usages and laws of the City and State of New York.

12.     That as a result of the foregoing, the defendant City of New York, is liable for the individual defendants' acts pursuant to the doctrine of "respondeat superior."

13.     The defendant City through the Department of CORRECTION ("DOC") operates a number of jails.  Correctional Health Services   ("CHS") is a unit within the New York City

Department of Heath and Mental Hygiene ("DOHMH"), a City Agency. DOHMH through CHS is responsible for providing medical care and services to prisoners confined to New York City jails. DOC and DOHMH/CHS are also responsible for the appointment, training, supervision, and conduct of their own clinical personnel including the defendant physicians referenced herein.

14.     Upon information and belief, at all times relevant hereto, Defendant Corizon Health Incorporated ("Corizon") provided medical care to prisoners in DOC custody. In carrying out its duties, Corizon is to ensure that the personnel it employs in city jails complied with all DOC and DOHMH/CHS policies, procedure and protocols in addition to all relevant local state and federal statutes and regulations.

15.     At all times relevant hereto, defendants Dr. John and Jane Doe #1 through 6 were physicians contracted by the City through defendant Corizon to administer care to the inmate population in DOC custody. During plaintiff's stay on Rikers Island, said physicians were responsible for providing appropriate medical care to prisoners such as plaintiff. The physician defendants are sued in their individual capacities.

16.     Defendant Corizon, as employer of all of the physician defendants, is responsible for their wrongdoing under the doctrine of "respondeat superior."

17.     At all times mentioned herein, defendants physicians were acting under color of state and local law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the City of New York and the State of New York.

## STATEMENT OF FACTS

### A History of Excessive Force in New York City Jails

18.     In August of 2014, the United States Attorney's Office issued a shocking report, exposing the DOC for deplorable conditions in New York City Jails, including of course the DOC's culture of excessive use of force by staff against inmates. In fact, for decades, through Department reports and civil litigation, DOC has been aware of the routine, dangerous, and unconstitutional use of excessive force by staff at individual facilities in the New York City Department of Correction. *See, e.g., Fisher v. Koehler*, 692 F. Supp. 1519 (S.D.N.Y. 1988), *injunction entered*, 718 F. Supp. 1111 (1989), *aff'd*, 902 F.2d 2 (2d Cir. 1990) [Correction Institution for Men]; *Jackson v. Montemagno*, CV 85-2384 (AS) (E.D.N.Y.) [Brooklyn House of Detention]; *Reynolds v. Ward*, 81 Civ. 101 (PNL) (S.D.N.Y.) [Bellevue Prison Psychiatric Ward]; *Sheppard v. Phoenix*, 91 Civ. 4148 (RPP) (S.D.N.Y.) [Central Punitive Segregation Unit].

19.     For example, *Sheppard v. Phoenix*, 210 F. Supp. 2d 250 (S.D.N.Y. 1998) (terminating injunction), was a class action that concerned the City's Central Punitive Segregation Unit (CPSU).

That litigation unearthed abuse of prisoners and cover-ups sufficiently serious to merit criminal prosecution.

20. *Ingles v. Toro*, 438 F. Supp. 2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), was a system-wide class action challenging the pervasive practice of using excessive force against inmates incarcerated in New York City's jails. This litigation revealed significant numbers of credible excessive force complaints from prisoners who had been seriously injured by staff in the City jails. The settlement of this class action was intended to provide meaningful improvements in the training, practice, and supervision of agency staff and investigators, and changes in the Department's use of force policy.

21. Since 2002, senior supervisors and uniformed staff in the DOC have been sued repeatedly by inmates alleging staff beatings. Many of these cases, all resulting in favorable judgments for plaintiffs following settlement, include remarkably similar allegations of misconduct. See:

• Reynolds v. City of New York, No. 11 Civ. 621 (S.D.N.Y.) (alleging beat-up in George Motchan Detention Center ("GMDC") resulting in shoulder fracture and loss of consciousness; settled for $200,500);

• Mull v. City of New York, No. 08 Civ. 8854 (S.D.N.Y.) (alleging beat-up in AMKC resulting in diffuse axonal injury to brain, partial

loss of eyesight, and partial loss of hearing, and requiring the victim to take seizure medications; settled for $550,000);

• Belvett v. City of New York, No. 09 Civ. 8090 (S.D.N.Y.) (alleging beat-ups at GMDC and Robert N. Davoren Center ("RNDC") resulting in facial fracture;  settled for $350,000);

• Youngblood v. Baldwin, No. 08 Civ. 5982 (S.D.N.Y.) (alleging beat-up at GRVC resulting in skull laceration and broken nose; settled for $240,000);

• Williams v. City of New York, No. 07 Civ. 11055 (S.D.N.Y.) (alleging beat-up in Otis Bantum Correctional Center ("OBCC") resulting in fractured jaw and facial bones and torn earlobe; settled for $202,500);

• Williams v. City of New York, No. 09 Civ. 5734 (S.D.N.Y.) (alleging beat-up in RNDC resulting in laceration to head; settled for $87,500);

• Lee v. Perez, No. 09 Civ. 3134 (S.D.N.Y.) (alleging beat-up at North Infirmary Command ("NIC") resulting in multiple rib fractures, a spinal fracture and a collapsed lung; settled for $300,000);

• Shuford v. City of New York, No. 09 Civ. 945 (S.D.N.Y.) (alleging two beat-ups at RNDC resulting in facial fractures; settled for $375,000);

• Diaz v. City of New York, No. 08 Civ. 4391 (S.D.N.Y.) (alleging beat-ups involving two inmates, one at AMKC and one at OBCC; settled for $400,000 and $450,000, respectively);

• Lugo v. City of New York, No. 08 Civ. 2931 (S.D.N.Y.) (alleging beat-up at NIC resulting in orbital fracture; settled for $185,000);

• Cuadrado v. City of New York, No. 07 Civ. 1447 (S.D.N.Y.) (alleging beat-up at RNDC resulting in punctured lung; settled for $175,000);

• Scott v. City of New York, No. 07 Civ. 3691 (S.D.N.Y.) (alleging beat-up at GMDC resulting in orbital fracture; settled for $175,000);

• Pischeottola v. City of New York, No. 06 Civ. 2505 (S.D.N.Y.) (alleging beat-up at RNDC resulting in punctured lung requiring chest tube; settled for $150,000);

• Rice v. N.Y.C. D.O.C., No. 03 Civ. 582 (S.D.N.Y.) (alleging beat-ups of two inmates at GRVC resulting in collapsed lung and contusion hematomas in one case, and in neck and spinal cord injuries causing permanent stutter in the other; settled for $255,000 and $590,000, respectively);

• Joseph v. N.Y.C. D.O.C., No. 02 Civ. 9219 (S.D.N.Y.) (alleging beat-up at GRVC resulting in orbital fracture; settled for $375,000).

22.     Additionally, through DOC's elaborate reporting system, the City of New York was aware of the pattern of a large number of incidents involving the use of unnecessary and/or excessive force by DOC staff members resulting in serious injuries to inmates but failed to take sufficient steps to curb these abuses.

23.     At the time plaintiff was beaten, the City was aware of the unwillingness of the Department to investigate adequately and impose meaningful discipline against DOC staff members who use unnecessary and excessive force on prisoners, or who fail to accurately and honestly report it.

24.     Through all these cases and Department reports, the City has been made aware of the widespread practice by DOC staff members of using excessive and/or unnecessary force to injure, and not restrain, inmates. They have also been made aware of the failures of DOC's Investigation Division to adequately investigate allegations of misconduct and of the refusal of the Department to bring effective disciplinary charges against its officers to promote institutional reform and protect the safety of prisoners confined in DOC custody.

25.     The City cannot credibly contend that they are unaware of the pattern of abuse that occurs with regularity in New York City

jails and the failure of the City to take sufficient measures to investigate and discipline this abuse.

26.     The City has not taken sufficient steps to curb the abuse that occurs on a daily basis in New York City jails. Indeed, it allows that abuse to persist through inadequate investigations of allegations of misconduct and the failure to discipline officers in the face of obvious wrongdoing.

**Assault upon Plaintiff**

27.     Plaintiff is a Hispanic male.

28.     On or about September 1, 2014, at about 11pm, plaintiff was returning to his cell at OBCC, located in the 1 North area.

29.     Plaintiff intended to turn in for the night.

30.     Correction Officer RICARDO MARTINEZ escorting plaintiff became frustrated that plaintiff was taking too long to turn in for the night and punched plaintiff into the face with a tremendous amount of force with either his fist or some object contained therein.

31.     Plaintiff "saw white" and immediately lost consciousness.

32.     When Plaintiff came to he was in tremendous pain and begged a number of guards he encountered for assistance.

33.     Each and every guard told plaintiff over and over again, "No…I don't want to have anything to do with this."

34.     Plaintiff's jaw broke in three places as a result of this attack and plaintiff began bleeding from the mouth and experiencing substantial pain.

35.     Plaintiff required emergency medical attention and surgical intervention to repair the damage to his face.

36.     Surgeons inserted metal plates in plaintiff's face to reconstruct the plaintiff's face and plaintiff's mouth had to be wired shut.

37.     Per plaintiff's doctors, additional surgeries may very well be necessary.

38.     Plaintiff begged for medical attention several times and was denied medical attention.

39.     Correctional officers told plaintiff that he was being denied medical attention for fear that he would report this assault.

40.     Plaintiff pleaded that he would not tell anyone, including hospital staff about the incident.

41.     At no time did plaintiff assault or attempt to assault any officer, nor did he present a threat or perceived threat to the

personal safety of any officer or to the security of the jail so as to warrant such violence.

42.     Plaintiff did not provoke this attack nor did he conduct himself in any manner that would warrant any use of force, much less the excessive force actually used.

43.     Defendant officers acted sadistically and maliciously and demonstrated deliberate indifference toward plaintiff's rights and physical wellbeing.

44.     All of the above was done in violation of state and federal law.

45.     Defendant Correction Officer RICARDO MARTINEZ employed unnecessary and unreasonable force against the plaintiff.

46.     Defendant officers acted maliciously and intentionally, and said acts are examples of gross misconduct.

47.     As a direct and proximate result of the malicious and outrageous conduct of defendants set forth above, Plaintiff suffered injuries including but not limited to emotional trauma, harm and distress, mental anguish and serious physical injuries.

48.     Plaintiff continues to suffer substantial pain due to the injuries he sustained.

49.     The conduct of the defendant correctional officers in assaulting the plaintiff and denying him medical attention directly and proximately caused serious physical and emotional injury, pain and suffering, mental anguish, humiliation and embarrassment.

50.     The events described herein have left permanent emotional scars that plaintiff will carry with him for the remainder of his life.

51.     After what appeared to be an eternity, plaintiff was taken to the infirmary on a gurney.

52.     Plaintiff was unrecognizable, as his face appeared deformed and swollen.

53.     Once at the prison infirmary, the prison doctor took a look at plaintiff and called 911.

54.     Plaintiff was taken to Bellevue Hospital.

55.     At the hospital, doctors took several x-rays of plaintiff's head, face, and confirmed the existence of several broken bones.

56.     Plaintiff remained in the hospital for several days due to the injuries he sustained at the hands of these violent defendants.

57.     After his return to Rikers Island, plaintiff's injuries were such that plaintiff needed continuous treatment.

58.     However, defendant Corizon failed to provide plaintiff with the necessary treatment.

59.     On September 21, 2014, Plaintiff experienced severe bleeding from the mouth for 8 hours.

60.     Again on September 24, 2014, plaintiff was bleeding from the mouth.

61.     On a documented visit to CHS intake, plaintiff was taken by EMS and transported to Elmhurst Hospital emergency room due to the same excessive bleeding from the mouth, which CHS intake chose to ignore earlier that day.

62.     In the ambulance, EMT records note that plaintiff was hot to the touch and possibly suffering from septic shock and respiratory distress.

63.     After examination and blood work up at Elmhurst, plaintiff was noted as presenting with levels of blood loss approaching hemorrhagic levels but insufficient to warrant blood transfusion.

64.     All of the above was done in violation of state and federal law.

65.     As a direct and proximate result of the malicious and outrageous conduct of defendants set forth above, Plaintiff suffered injuries including but not limited to emotional trauma, harm and distress, mental anguish, serious physical injuries including three

(3) facial fractures and more psychological injury and suffering, and permanent disfigurement.

66.     The conduct of the defendant correctional officers in assaulting the plaintiff and denying him medical attention directly and proximately caused serious physical and emotional injury, pain and suffering, mental anguish, humiliation and embarrassment.

67.     The officers intentionally used excessive force. The individual defendants acted with reckless and wonton disregard for the rights, health, and safety of the plaintiff.

68.     As a direct result of the acts alleged herein, the plaintiff has suffered serious physical injury and pain, severe mental pain and anguish, and severe emotional distress. All of the events complained of above have left permanent emotional scars that the plaintiff will carry with him for the remainder of his life.

## COUNT ONE
### Assault and Battery
### Against the City of New York

69.     Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

70.     Defendant correction officer RICARDO MARTINEZ assaulted and battered plaintiff.

71.     Ricardo Martinez was employed by the City of New York.

72.     Ricardo Martinez was acting within the scope of his employment at the time of the incident.

73.     The City of New York, as Ricardo Martinez's employer, is responsible for his actions in this incident.

74.     As a direct and proximate result of this assault and battery, plaintiff suffered the damages herein alleged.

**COUNT TWO**
**42 U.S.C. § 1983**
**Excessive Use of Force**
**Against Correction Officer RICARDO MARTINEZ**

75.     The plaintiff incorporates by reference the factual allegations set forth above as if fully set forth herein.

76.     The conduct and actions of defendant Martinez, acting under color of law and under his authority as a New York City Department of CORRECTION officer, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of his acts, was done without lawful justification, and was designed to and did cause specific serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. § 1983 and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

77.     As a direct and proximate result of this misconduct and abuse of authority detailed above, plaintiff sustained the damages herein alleged.

**COUNT THREE**
**42 U.S.C. § 1983**
**Against Defendant City (Monell)**

78.     The plaintiff incorporates by reference the factual allegations
set forth above as if fully set forth herein.  Prior to the date of the
incident alleged herein, the City of New York developed and
maintained policies or customs exhibiting deliberate indifference to
the constitutional rights of persons in New York, which caused the
violation of plaintiff's rights.

79.     It was the policy and/or custom of the City of New York to
inadequately and improperly investigate citizen complaints of
widespread, systemic police misconduct, and such acts of
misconduct have instead been allowed by the City of New York.

80.     It was the policy and/or custom of the City of New York to
inadequately supervise and train its police officers, including the
defendant officers, thereby failing to adequately discourage further
constitutional violations on the part of its police officers. The City
of New York did not require appropriate in-service training or re-
training of officers who were known to have engaged in police
misconduct.

81.     The effects of any in-service training and re-training of
officers known to have engaged in police misconduct were wholly
negated by the rampant culture of misconduct and impunity

sanctioned by the command structure of the New York City Department of CORRECTION and City of New York.

82.     As a result of the above described policies and customs, correction officers of the City of New York, including the Defendant Officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be allowed.

83.     The above described policies and customs demonstrated a deliberate indifference on the part of policymakers of the City of New York to the constitutional rights of persons within the City, and were the cause of the violations of plaintiff's rights alleged herein.

**COUNT FOUR**
**Respondeat Superior Liability**
**Against the City of New York**

84.     The plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

85.     The conduct of defendant officers occurred while they were on duty, under the color of law, in and during the course and scope of their official duties and functions as duly sworn correction officers, and while they were acting as agents and employees of the City of New York and the Department of CORRECTION, and as a result the defendants City of New York is liable to the plaintiff pursuant to the doctrine of respondeat superior.

86.     As a direct and proximate result of this misconduct and abuse of authority detailed above, plaintiff sustained the damages herein alleged.

### COUNT SIX
### Deliberate Indifference to Medical Needs
### As to all defendants

87.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

88.     The individual defendants were aware of plaintiff's need for medical care and failed to act in deliberate indifference to plaintiff's needs.

89.     Accordingly, defendants violated the Fourteenth Amendment because they acted with deliberate indifference to plaintiff's medical needs.

### COUNT SEVEN
### Medical Malpractice
### Against the Physician Defendants and Corizon

90.     The Medical Defendants were employed, retained and/or contracted with by the City to provide medical care to all inmates in the care and custody of the City in New York City jails, including Mr. Lopez. The Medical Defendants agreed and purported to provide medical care and services to inmates on Rikers Island at all relevant times herein.

91.    The Medical Defendants and defendant Corizon held themselves out as possessing the proper of degree learning and skill necessary to render medical care, treatment, and services in accordance with good and accepted medical practice, and that they undertook to use reasonable care and diligence in the care and treatment of inmates, including Mr. Lopez.

92.    The Medical Defendants and Corizon were negligent and careless, acted contrary to sound medical practice, and committed acts of medical malpractice against Mr. Lopez.

93.    Defendant Corizon, as employer of some or all of the physician Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

94.    As a result of defendants' medical malpractice, negligence, carelessness, and unskillfulness, Mr. Lopez sustained the damages hereinbefore alleged together with permanent and consequential sequelae therefrom. A certificate of merit pursuant is annexed hereto.

**COUNT EIGHT**
**Negligent Hiring/Training/Retention of**
**Employment Services**
**Against Corizon**

95.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

96.    Defendant Corizon owed a duty of care to Mr. Lopez to prevent the conduct alleged, because under the same or similar

circumstances, a reasonable, prudent, and careful person should have anticipated that injury to Mr. Lopez or to those in a like situation would probably result from the foregoing conduct.

97.     Upon information and belief, all of the Medical Defendants were unfit and incompetent for their positions.

98.     Corizon knew or should have known through the exercise of reasonable diligence that the Medical Defendants that it employed were potentially dangerous and failed in fulfilling their duties.

99.     Corizon failed to take any steps to oversee the work of its employees or ensure that they were performing their jobs.

100.     Corizon's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused plaintiff's injuries and lack of treatment.

101.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### COUNT NINE
### Negligence
### Against the Individual Medical Defendants and Corizon

102.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

103.     Defendants owed a duty of care to Mr. Lopez as an inmate on Riker's Island.

104.     Defendants breached the duty of care that they owed to Mr. Lopez by not properly performing their duties, by not being at their

correct posts, by denying him access to adequate medical care in failing to provide medical treatment, and/or otherwise neglecting his medical needs.

105.    Defendants' breach of their duty of care was the proximate cause of Mr. Lopez' serious injuries, including severe pain and suffering.

106.    Defendant Corizon, as employer of all or some of the Medical Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

107.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.


DATED:      April 5, 2016
            Brooklyn, New York

            _____
            Afsaan Saleem, Esq.

            The Rameau Law Firm
            16 Court Street, Suite 2504
            Brooklyn, NY 11241
            (71) 852-4759
            saleemlawny@gmail.com

            *Attorney for plaintiff*